# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

KERI RENE THOMAS                              CIVIL ACTION NO. 07-0739

VS.                                          SECTION P

BURL CAIN, WARDEN                            JUDGE MELANÇON

                                             MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the court is Keri Rene Thomas's *pro se* petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 on April 23, 2007. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections.  Thomas is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana where he is serving a forty year sentence imposed following his 2004 conviction for manslaughter.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.  For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** because petitioner's claims are procedurally defaulted and without merit.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2003, petitioner was indicted by the Lafayette Parish Grand Jury on a charge of second degree murder. [doc. 1-3, p. 6].  On March 31, 2004, petitioner pled

guilty to the lesser included offense of manslaughter pursuant to an open-ended plea agreement.[1] [doc. 1-4, p. 37 (court minutes); doc. 1-5, pp. 1-7 (plea transcript)].  In accordance with the plea agreement, a sentencing hearing was held on August 12, 2004. At the conclusion of that hearing, petitioner was sentenced to serve forty years at hard labor. [doc. 1-4, p. 38 (court minutes); doc. 1-5, pp. 8-48 (sentencing transcript)]. Petitioner did not appeal his sentence or conviction.

On June 9, 2005, petitioner filed a *pro se* application for post-conviction relief [doc. 1-4, pp. 1-18] and a supplemental application for post-conviction relief in the Fifteenth Judicial District Court. [doc. 1-4, pp. 19-40].  In his original application for post-conviction relief, petitioner argued two claims: (1) unconstitutionality of LSA C.Cr.P. art. 875, the Louisiana statute that provides for pre-sentence investigations; and (2) ineffective assistance of counsel due to counsel's failure to object to the ordering of a pre-sentence investigation. [doc. 1-4, p. 11].  In his supplemental application he argued a series of claims concerning the validity of the indictment under which he was prosecuted, namely,  (1) the State's failure to amend the indictment from second degree murder to manslaughter; (2) the failure to "confirm" the conviction and sentence according to "La. Crim. Code Art. 871(A), (B)(1)(a), (B)(i) and (ii)" by putting petitioner's fingerprints on the indictment after conviction;  (3) defective indictment (4) general due process and

---

[1] The plea colloquy indicates that petitioner was aware of the maximum and minimum sentences that could be imposed following his conviction for manslaughter and that the sentence would be left to the "total discretion" of the judge. [doc. 1-5, p. 5].

equal protection violations based on the defective nature of the indictment, and (5) failure to return the indictment in open court. [doc. 1-4, p. 21].

On July 8, 2005, the State was ordered to answer the application for post-conviction relief. [doc. 1-5, p. 49].  On July 15, 2005, the State answered the original application, but addressed only the two claims raised in that pleading. [doc. 1-5, pp. 50-54].  On August 18, 2005, petitioner filed a Motion asking the court to compel the State to answer his supplemental application for post-conviction relief. [doc. 1-5, pp. 55-59]. On August 25, 2005, the court denied this motion as moot, apparently being unaware of the contents of petitioner's supplemental application for post-conviction relief. [doc. 1-5, p. 55].

On September 22, 2005, petitioner filed a second supplemental application for post-conviction relief. [doc. 1-6, pp. 1-12].  In this pleading, petitioner raised the following claims for relief: (1) ineffective assistance of counsel for failing to quash the indictment which was defective because it failed to make reference to the issue of intent; (2) ineffective assistance of counsel for failing to conduct an investigation into mitigating circumstances and failure to bring these mitigating circumstances to the attention of the court, namely petitioner's alleged history of prior mental "problem", that petitioner should have been on medication for his mental disease,  and petitioner's "eye condition"; and (3) ineffective assistance of counsel by failing to object to additional waivers of the right to seek review of his conviction and sentence.  Petitioner also claimed that his guilty

3

plea was involuntary because the trial court failed to explain the nature of the charge to him and failed to  have petitioner provide a factual basis for the plea in his own words. [doc. 1-6, pp. 1-12].

On October 5, 2005, the State answered petitioner's second supplemental application for post-conviction relief. [doc. 1-5, pp. 13-16].

Counsel was appointed to represent petitioner, and on February 16, 2006, a hearing on the post-conviction applications was held.  At the outset, petitioner's court-appointed post-conviction counsel made the following statement concerning the issues to be considered,

> This matter is before the Court on a motion for ineffective counsel filed by Mr. Thomas.
>
> The primary allegations will be – are that Mr. Thomas feels that because of his mental incapacity, he could not and should not have been found guilty – I mean, pled. Also, not only at the time of his plea that he could not assist counsel, but that he was not able to determine right from wrong at the time of the offense.
> I have medical records to place into evidence, but have Mr. Piccione here present, and Mr. Piccione was appointed as Mr. Thomas' counsel initially, and Mr. Piccione assisted Mr. Thomas up to and through the plea...
>
> *     *     *
>
> There are other allegations in [petitioner's] post-conviction pleadings that he is alleging. I would – with the Court's permission, I'm not here to withdraw any of his pleadings. I'm here, however, only to argue the motion on the sanity issue. I am not – I would ask the Court to hear Mr. Thomas, if he has anything to say, on the other aspects of his motion.  [doc. 1-7, pp. 25-26].

4

The prosecutor responded as follows:

> ... the defendant filed an amended post-conviction relief petition and the wording is specifically that his counsel was ineffective and failed to investigate mitigating circumstances. There's no allegation that he pled improperly or that he was insane at the time of the plea or that he was insane at the time of the offense. It was failure to investigate mitigating circumstances.
>
> Now, if you recall, Judge, he pled guilty to an amended charge of manslaughter, and the whole thrust of the defense was to mitigate the sentence. So I'm not quire sure I – what I'm defending here. Am I defending his plea – There's been no motion to set aside the plea, and so I would object to an enlargement of the pleadings. The pleadings were limited to failure to investigate mitigating circumstances, one of which was, in fact, his mental state. [doc. 1-7, pp. 26-27].

Petitioner's post-conviction counsel then stated,

> I would agree with Mr. Stutes ... The thrust of my argument would be that because of Mr. Thomas' preexisting mental problems at the time of the offense and at the time that he pled, that he, Mr. Thomas, should – those conditions should have been made, brought before the Court's attention and were not, and it was because Mr. Piccione failed to properly investigate the past mental problems that he had and put those before the Court for the court to consider in any way that is appropriate under the circumstances. [doc. 1-7, p. 27].

The prosecutor, counsel for the petitioner, and the court then agreed that the pleadings would not be enlarged beyond what had been alleged in the supplemental application for post-conviction relief. [doc. 1-7, p. 27].

At the hearing petitioner's counsel, James Kirk Piccione, father, George Brister, and wife, Francine Lewis Thomas, testified.  Mr. Brister testified that he could not recall

5

if Piccione asked about Thomas' background or childhood. [doc. 1-7, p. 49].  Thomas

testified that she could not remember providing Piccione with information about her

husband's past, but she did tell the police the night that Thomas was arrested to put

Thomas on twenty-four hour watch. She also told the police that her husband did "strange

things."  However, this was not relayed to Piccione.  Although she was aware of Thomas'

prior "problems" and "treatment" when he was an adolescent, she was never asked about

this. She did, however, tell Piccione that her husband had a drug problem.  With respect

to her request to have Thomas placed on twenty-four hour watch, Thomas admitted that

she was concerned that he might hurt himself.

Moreover, while claiming that Thomas had received treatment at different points

in his life, she admitted that Thomas had been in prison until only a short time before the

killing. [doc. 1-7, pp. 51-55].  Amongst exhibits entered by the defense were the records

of Dr. Jerry Morewitz of the East Virginia Medical School regarding treatment Thomas

received when he was twelve years old and certified records from the Louisiana State

Penitentiary.  [doc. 1-7, pp. 58-59].

At the conclusion of the hearing, the prosecutor made the following argument:

> my contention is that the defendant hasn't carried the burden of proof to
> show counsel was ineffective. It's kind of a unique situation. He's basically
> saying he was not effective in not telling you, the sentenc[ing] Judge, all the
> mitigating factors. You've heard it now. The question is would it change the
> sentence? Would it change anything? There has been no proof of the mental
> state that would have been any different than – actually, I think much of the
> evidence that came out might have been worse for him. I mean, you didn't
> give him the maximum sentence, but it certainly doesn't rise to the level of

6

proof that would show ineffectiveness of counsel. [doc. 1-7, pp. 59-60]

The trial court apparently denied petitioner's application for post-conviction relief.[2]

On February 26, 2006, petitioner filed a Notice of Intent advising the court of his desire to invoke the supervisory jurisdiction of the Third Circuit Court of Appeals and requesting a return date for his writ application. [doc. 1-6, p. 24]. On the same date, petitioner filed a Motion for Production of Documents. [doc. 1-6, pp. 18-19].  On March 16, 2006, the trial court granted the motion and directed the Clerk of Court to furnish petitioner with a copy of the transcript of the post-conviction hearing on or before April 15, 2006. [doc. 1-6, p. 20].  Meanwhile, on March 6, 2006, petitioner requested an extension of the return date. [doc. 1-6, p. 21-22].  His motion was granted and the return date was extended until April 30, 2006. [doc. 1-6, p. 23].

On March 21, 2006, petitioner filed his writ application in the Third Circuit Court of Appeals where it was assigned Docket Number 06-00412-KH. [doc. 1-6, p. 24]. Petitioner's writ application argued the following claims for relief, the majority of which had never been properly presented to and/or addressed by the lower court: (1) unconstitutionality of La. C.Cr.P. art. 875; (2) ineffective assistance of counsel; (3)

---

[2] Petitioner neglected to provide the final page of the transcript of the post-conviction evidentiary hearing. [See doc. 1-7, p. 60-61, page 38 is missing].   In his subsequent writ application filed in the Louisiana Supreme Court, petitioner alleged that the trial court provided no reasons for denying petitioner's post-conviction application. In support of this allegation, Thomas referred to the minutes of court and not the transcript. [See doc. 1-7, pp. 7-8, "The court gave no reason for its denial. See P.C. minutes, Exhibit H."].   It appears plausible that the court denied the application on the record.  However, without the missing last page of the transcript this cannot be verified.

insufficient indictment; (4) indictment not returned in open court; (5) denial of due process; (6) prosecutor failed to amend indictment; (7) conviction and sentence not confirmed in accordance with La. C.Cr.P. art. 871(B); (8) ineffective assistance of counsel based on counsel's failure to investigate or prepare a defense based on petitioner's mental history or eye condition and failure of counsel to request a competency hearing to ensure that petitioner was competent to enter plea; and (9) petitioner's plea was not voluntary and intelligent. [doc. 1-6, pp. 32-33].

On April 5, 2006, petitioner's writ application was denied without prejudice as deficient because the application did not comply with Rule 4 of the Uniform Rules of the Courts of Appeal and La. Code Crim.P. art. 912.1.  More specifically, the Third Circuit held that the application was deficient because petitioner's writ application did not contain a copy of the complained of judgment, the trial court's reasons for judgment, a copy of petitioner's applications for post-conviction relief, a copy of the transcript of the February 16, 2006 evidentiary hearing, a copy of petitioner's indictment, court minutes, or a copy of the transcript of petitioner's guilty plea. *State of Louisiana v. Keri R. Thomas*, No. KH 06-00412 (La. App. 3 Cir. 4/5/2006) (unpublished). [doc. 1-6, p. 48].

Petitioner chose not to cure the procedural deficiencies noted by the Third Circuit for that appellate court to review petitioner's claims.  Rather, on April 24, 2006, petitioner filed a writ application directly in the Louisiana Supreme Court.  Along with his writ application petitioner submitted copies of his indictment, plea agreement, *Boykin* minutes

8

and transcript, sentencing minutes, application for supervisory writs, court of appeals judgment, post-conviction minutes and pleadings, notice of intent, motion for documents, letter for extension, motion in the court of appeals, and, state's answer to post-conviction claims. [doc. 1-7, p. 4].

Petitioner raised the following claims: (1) insufficient indictment which was not returned in open court as required by Louisiana's Code of Criminal Procedure; (2) prosecutor failed to properly amend the indictment; and (3) denial of due process and equal protection based on counsel's deficient performance with regard to petitioner's mental health problems and for allowing petitioner to enter into a plea that was not "intelligently made." [doc. 1-7, pp. 9-10]. More specifically, petitioner argued: (1) the short-form indictment failed to allege all of the elements of the offense and was therefore deficient [doc. 1-7, pp. 10-14]; (2) the indictment was not returned in open court as required by law [doc. 1-7, pp. 14-15]; (3) "Denial of due process of law may result from a departure from established principles of law in the matter jurisdiction; as in the case of a trial without jurisdiction to try or the trial court to acquire jurisdiction by due process" (this argument included allegations that the failure to appoint a sanity commission to evaluate petitioner's mental state at the time of the plea was such a constitutional violation) [doc. 1-7, pp. 15-17]; (4) The prosecutor failed to amend the indictment to reflect the charge of manslaughter [doc. 1-7, p. 17]; (5) Petitioner's conviction and sentence was not confirmed as required by La. C.Cr.P. art. 871(B) [doc. 1-7, pp. 17-18];

9

(6) Ineffective assistance of counsel based on counsel's failure to investigate petitioner's mental health background and request a competency hearing or a sanity commission [doc. 1-7, pp. 18-20]; and (7) plea was not intelligently made since petitioner was suffering from an undiagnosed mental defect and was in need of medication. [doc. 1-7, pp. 20-21].

On May 23, 2006, the transcript of the post-conviction evidentiary hearing was provided to petitioner. [doc. 1-7, p. 23].

On March 16, 2007, Thomas' application for writs was denied by the Louisiana Supreme Court without comment. *State of Louisiana ex rel. Keri Rene Thomas v. State of Louisiana*, 2006-1506 (La. 3/16/2007), 952 So. 2d 689.

On November 27, 2006, while petitioner's writ application was pending in the Supreme Court, Thomas filed a second application for post-conviction relief in the Fifteenth Judicial District Court. On January 8, 2007, the State answered and raised procedural objections. On January 26, 2007, the application was denied by the trial court for the following reasons, "Thomas has filed this second application claiming that his plea was not knowingly and intelligently made due to an undiagnosed mental disorder and he was supposed to be on medication for that disorder. This is the same issue that was presented in the first application. Since this application fails to raise a new or different claim, it is dismissed pursuant to C.Cr.P. art. 930.4." [doc. 1-9, p. 2].  Petitioner did not seek further review of this claim. [doc. 1-1, paragraph 7].

10

Instead, petitioner filed the instant federal petition on April 23, 2007 arguing two claims for relief: (1) that his guilty plea was not voluntarily and intelligently made because of an undiagnosed mental disorder, and that he was not on the medication needed to control that disorder at the time [doc. 1-3, pp. 17-20]; and (2) that counsel was ineffective for not investigating mitigating circumstances prior to his plea. [doc. 1-3, pp. 20-25].

## LAW AND ANALYSIS

### I. Exhaustion and "Technical" Procedural Default

The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir.1999) *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir.1983); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir.1999);  *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir.1999); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of each of his claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5 Cir.2001); *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir.1998) *citing Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir.1985); *Mercadel*, 179 F.3d at 275 *citing Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *Deter v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). When a petitioner has raised a claim in a procedural context "in which its merits will not be considered," he has not "fairly presented" the claim to the state courts and, accordingly, has not satisfied the exhaustion doctrine. *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989);  *Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir.1989).

12

Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Magouirk*, 144 F.3d at 360 *citing Richardson*, 762 F.2d at 431-32. In Louisiana, the highest court is the Louisiana Supreme Court.  Thus, in order to properly exhaust a claim, a federal *habeas corpus* petitioner must have fairly presented the substance of the claim in a *procedurally correct manner* to the Louisiana Supreme Court.

Under Louisiana law, the various Courts of Appeal have supervisory jurisdiction over cases which arise within their circuits. LSA Const. Art. 5, §10(a). Specifically, with regard to Applications for Post-Conviction Relief, LSA C.Cr.P. art. 930.6 provides, "The petitioner may invoke the supervisory jurisdiction of the court of appeal if the trial court dismisses the application or otherwise denies relief on an application for post-conviction relief."  Thus, the first step in the review process is an application for writs in the appropriate court of appeals.

Petitioner sought appellate review, however, the Third Circuit did not address the merits of petitioner's claims because petitioner failed to abide by that court's procedural rules for proper presentation of claims.[3] *See State of Louisiana v. Keri R. Thomas*, KH 06-

---

[3] Uniform Rule 4-1 provides in pertinent part, "Application for Post-Conviction Relief. The applicant shall use the uniform application for post-conviction relief ... Inexcusable failure of the applicant to comply with this Rule may subject the applicant to dismissal of the application, or to other sanctions of the court."  Rule 4-5 mandates that the writ application "shall contain ... a copy of the judgment, order, or ruling complained of ... a copy of the judge's reasons for judgment , order, or ruling (if written) ... a copy of each pleading on which the judgment, order, or ruling was founded ... a copy of pertinent court minutes; and ... the notice of intent and return date order ...." La. C.Cr.P. art. 912.1(C)(1) provides in part, "In all other cases not otherwise provided by law, the defendant has the right of

13

00412 (La. App. 3 Cir. 4/5/2006)(unpublished). [doc. 1-6, p. 48].  Thus, petitioner's

application was denied on procedural grounds.  Indeed, petitioner himself acknowledged

the deficiencies of his application when he stated therein, "the Relator is not a skilled

attorney and was forced to writ [sic] this writ application without his transcripts and other

needed documents to protect his right to review and to bring to Federal Court ...." [doc. 1-

6, p. 45].   In addition, in his writ application to the Supreme Court, petitioner conceded,

"The Relator can not fault the Court of Appeal for denying his writ for the reasons given.

The Relator did bring it to the Court's attention that he had requested the documents and

not been provided them." [doc. 1-7, p. 9].

       The fact that petitioner may not have had all of the exhibits required by the

Uniform Rules and article 912.1 when he filed his writ application is of no moment.

Under Rule 4-3, petitioner needed only to request an extension of the return date from

either the trial court or the court of appeals until he was in possession of all required

documentation. The Third Circuit's judgment of dismissal was "without prejudice" – an

implicit  invitation to petitioner to re-submit a compliant writ application.  The record

demonstrates that petitioner was in possession of the needed documents when he filed his

writ application in the Louisiana Supreme Court. [doc. 1-7, p. 4].  Had petitioner

requested an extension of the return date, he would shortly thereafter have been in

---

judicial review by application to the court of appeal for a writ of review. This application shall be accompanied by a
complete record of all evidence upon which the judgment is based unless the defendant intelligently waives the right
to cause all or any portion of the record to accompany the application."

possession of the documents needed to re-submit his writ application to the Third Circuit. Yet, he chose to by-pass that court's review, instead opting to seek review in the Louisiana Supreme Court.

The Supreme Court has supervisory jurisdiction over the courts of appeal. LSA Const. Art. 5, §5. In this instance, however, the intermediate appellate court never had an opportunity to review petitioner's claims because they were never presented in a procedurally proper manner. The merits of petitioner's claims were not properly before the Louisiana Supreme Court.  Petitioner's claims therefore remain unexhausted.

A petitioner has "technically exhausted" his federal claims if he fails to properly and timely present them to the Louisiana courts and is thereafter time-barred from seeking relief in the Louisiana courts. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir.1998) *citing Coleman v. Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue*, 188 F.3d at 254-55; *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998). In such a case, however, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted. *Id.*

Since petitioner failed to properly present his federal *habeas corpus* claims to the Louisiana Supreme Court those claims remain unexhausted, and for purposes of federal

15

*habeas corpus* review, because petitioner cannot now meet the exhaustion requirement, those claims are "technically" procedurally defaulted.[4]  *See Wilder; O'Sullivan;*

*Magouirk; Richardson; Mercadel; Dupuy; Coleman; Sones; Bledsue; and Fuller, supra.*

## II. Traditional Procedural Default

Further, since the Third Circuit did not rule on the merits of petitioner's post-conviction claims because petitioner failed to comply with article 912.1 and Rule 4 of the Uniform Rules of the Courts of Appeal, petitioner's claims are also traditionally procedurally defaulted. This is so because the last reasoned decision on petitioner's claims clearly and expressly relied on state procedural rules as the basis for its Judgment. See *Harris* and *Sones, infra*. The "traditional"procedural default doctrine applies to bar federal *habeas corpus* review when a state court declines to address a prisoner's federal claims because the prisoner failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

Federal courts typically refuse to reach the merits of questions of federal law if the state courts have expressly relied on an "adequate and independent" state procedural ground in refusing to review the claim. "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997), *cert. denied*, 523 U.S. 1125

---

[4] Post conviction relief is now unavailable to petitioner under La. C.Cr.P. art. 930.8 which provides a two year limitations period for filing such applications. The limitations period generally runs from the date that the judgment in question became final. Petitioner's judgment of conviction  became when the 30-day limitation for filing a direct appeal lapsed, that is, at the latest, on or about September 12, 2004, thirty days after petitioner's sentencing. The limitations period of article 930.8 therefore expired two years later, on or about September 12, 2006.

(1998), *citing Amos* v. Scott, 61 F .3d 333, 339 (5th Cir. 1995).  A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*, citing *Lott v. Hargett* 80 F.3d 161, 165 (5th Cir.1996).  A procedural rule is "independent" when the last state court rendering a judgment in the case "clearly and expressly" indicates that its judgment rests on the procedural ground. *Amos*, 61 F.3d at 338.

The procedural rules identified in this case satisfy both requirements. Petitioner herein makes no showing that Rule 4 of the Uniform Rules of the Courts of Appeal or La. C.Cr.P. art. 912.1 are not evenhandedly applied. Thus, these state court procedural rules are presumed "adequate."  Moreover, while most appellate court decisions declining review of writ applications are unpublished, review of published  Louisiana jurisprudence establish that the Louisiana courts of appeal regularly invoke the requirements of Rule 4 and C.Cr.P. art. 912.1 to bar review of non-conforming writ applications.  *See State v. Babin,* 545 So.2d 721 (La. App. 1st Cir. 1989); *State v. Bailey*, 500 So.2d 843, fn.1 ( (La. App. 1st Cir. 1986); *State v. Dangerfield*, 451 So.2d 195, 196 (La. App. 2nd Cir. 1984); *State v. Frederick,* 518 So.2d 1127 (La. App. 1st Cir. 1987); *State v. Slade*, 518 So.2d 1128 (La. App. 1st Cir. 1987); *State v. Prater*, 2007 WL 2255736 (La. App. 3rd Cir. 2007); *State v. Turner*, 896 So.2d 286, 289 (La. App. 3rd Cir. 2005).[5]  Furthermore, the rules are

---

[5]*See also Adams v. Stalder*, 934 So.2d 722, fn. 8 (La. App. 1st Cir. 2006) (noting the court initially refused to consider the writ for violation of Rule 4-5); *Robertson v. Hessler*, 881 So.2d 116 (4th Cir. 2004) (same); *Lobdell v. Torres*, 812 So.2d 678, 679 (4th Cir. 2002) (same); *Brown v. American Nat. Property & Casualty*, 720 So.2d 1278, 1279 (4th Cir. 1998) (same); *State v. Dixon*, 712 So.2d 1078, 1079 (4th Cir. 1998) (same).

"independent" because the last reasoned judgment on petitioner's claims, that of the Third

Circuit Court of Appeals, expressly relied on state procedural rules, Rule 4 of the

Uniform Rules of the Courts of Appeal and LSA C.Cr.P. article 912.1, in declining to

reach the merits of petitioner's post-conviction claims.  The Louisiana Supreme Court's

writ denial did not specify reasons for its denial of review and therefore, it must be

presumed that the Supreme Court likewise did not reach the merits of the claim. *Ylst v.*

*Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

**Cause and Prejudice/Miscarriage of Justice**

Because petitioner's claims are both traditionally and technically procedurally

defaulted, this court may  refuse to review the merits of these claims unless petitioner

demonstrates that he should be excused from application of the procedural default

doctrine. This he can do by showing cause and prejudice for the default or that a

miscarriage of justice will result from the denial of federal *habeas* review. *See Finley*,

243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman, supra; McCleskey v. Zant*, 499 U.S. 467,

111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996);

*Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61

F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v.*

*Cain*, 53 F.3d 106, 108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th

Cir.1996) *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

In *Murray v. Carrier*, the Supreme Court explained that "cause" requires an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard. *Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted)."

Petitioner implies that the cause of his default in the Third Circuit was the failure of the Fifteenth Judicial District Court to supply him with the documents needed to file a procedurally proper writ application. [see doc. 1-7, pp. 7-9].  As previously discussed, however, petitioner was ultimately provided all of the documents which were needed. That the documents were not immediately available to petitioner is of no moment, since Rule 4-3 of the Uniform Rules of the Courts of Appeal would have allowed petitioner to seek and obtain an extension of the return date while he awaited production of the necessary documents. Further, the Third Circuit's dismissal "without prejudice" was an implicit invitation to plaintiff to return to the Third Circuit when he had obtained the documents.  Yet, rather than availing himself of the opportunity to re-submit his application after receiving the required documentation, petitioner instead chose to by-pass

19

the intermediate appellate court and file directly in the Louisiana Supreme Court. Thus, the delay in obtaining the required documentation cannot constitute cause for petitioner's default.  Rather, petitioner's default was caused by his own actions, in failing to seek an extension of time to file his application and in failing to resubmit his application to the Third Circuit in proper form once the required documentation had been received.

If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).  Nevertheless, in this case, even if it is assumed that petitioner has shown cause for his default, he cannot show prejudice since he is unable to show that even a properly filed writ application would have resulted in a judgment in his favor because, for the reasons set forth below, petitioner's claims for *habeas corpus* are patently without merit.

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017,

20

117 S.Ct. 530, 136 L.Ed.2d 416 (1996) *quoting McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that he is actually innocent of the crime of which he was convicted, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims. Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

### III. Rule 4/Merits Consideration

Moreover, even if petitioner's claims were not procedurally barred, petitioner is not entitled to federal *habeas corpus* relief.   Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  *See also Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) citing  Rule 4, Advisory Committee Notes ("The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.'").

Based on the court's review of the pleadings and exhibits attached thereto, it is alternatively  recommended that the application be summarily dismissed with prejudice because petitioner is not entitled to relief.

### Claim I – Guilty Plea

In his first claim for relief petitioner contends that his guilty plea was invalid because at the time he entered his guilty plea petitioner was suffering from an undiagnosed mental disorder (presumably bipolar mood disorder) for which he was not on medication to control that disorder.

The test for deciding competence to enter a guilty plea is whether the defendant (1) has sufficient ability at the time of trial to consult with his attorney with a reasonable degree of rational understanding, and (2) has a rational as well as factual understanding of the proceedings against him. *Godinez v. Moran*, 509 U.S. 389, 396-400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *Drope v. Missouri*, 420 U.S. 162, 171-72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Since the state court's determination of competency is presumed correct, a federal *habeas* petitioner bears a heavy burden in contesting his competency during federal collateral review. *DeVille v. Whitley*, 21 F.3d 654, 656 (5 Cir.1994).

The evidence submitted by petitioner here, and in the Louisiana state courts, does not establish that, at the time of his 2004 plea, petitioner did not have sufficient ability to

consult with his attorney with a reasonable degree of rational understanding, or that he did not have a factual understanding of the proceedings against him.  To the contrary, the record belies any such claim. At the evidentiary hearing, petitioner's trial counsel testified that after his 2003 appointment, he met with petitioner on several occasions prior to the entry of his plea and that it was never apparent that petitioner lacked the ability to understand the nature of the proceedings. [doc. 1-7, p. 28-29]. To the contrary, counsel testified, "In my communications with Mr. Thomas, you know, he appeared lucid. I didn't seem to have any trouble communicating with him. He seemed to understand what was going on ... but there was nothing in my communications with Mr. Thomas that alerted me that – that there was any kind of mental or psychiatric issue I needed to look into with him." [doc. 1-7, p. 30]. Counsel conceded that certain statements made by petitioner's wife to the police were problematic, but he continued, "If there had been something else, like if in my communications with Mr. Thomas himself I had had some doubts as to his competency and his understanding what I was saying, if the family had indicated to me he had previously had any mental treatment or psychiatric treatment, then I think I would have taken that further. But really the only indication I had was that statement by Francine [petitioner's wife] at a time right after a murder's been committed when she's kind of in a panic. You know, he's apparently in a panic and on the run at that time. In my personal dealings with him ... he was always ... really on top of things and appeared to understand what I was talking about and what was going on, and appeared to have a good handle on

23

his defenses, appeared appropriately remorseful about what happened." [doc. 1-7, pp. 32-33].

When asked if Piccione was aware of "any information which suggested that [the petitioner] did not know the nature of the charges against him or he was not capable of communicating with you in order to defend himself ...." counsel replied, "No." [doc. 1-7, p. 41]. That testimony is consistent with both petitioner's wife's and father's  testimony wherein they each acknowledged that they did not tell Piccione that petitioner suffered from any mental disorders. [doc. 1-7, p. 49, 51, 53].  When asked if counsel felt that petitioner was capable of assisting in his defense, Piccione answered, "It didn't appear to me we had any problems communicating. He appeared to understand what we were discussing. He appeared to appropriately weigh the evidence and, you know, what a jury would likely think about the evidence." [*id*.]

Further, the transcript of petitioner's plea negates petitioner's claim of incompetency at the time of his plea.  Prior to accepting petitioner's plea, the trial court asked if petitioner was under a doctor's care for any mental problems and petitioner responded, "No, sir." [doc. 1-5, p. 2].  When asked if he had "a clear mind and understand everything that's going on today ..." petitioner responded, "Yes, sir." [*id*., pp. 2-3].  When counsel was asked if he had any doubts concerning petitioner's competency, counsel responded, "No doubt, Your Honor." [*id*., p. 3].  Based on these representations and his opportunity to judge petitioner's demeanor, the court expressly found petitioner

24

competent to enter his guilty plea. [*id.*, p. 3].  Thereafter, petitioner acknowledged that the factual basis for his plea as outlined by the prosecutor was true, that he understood the nature of the plea proceedings, that he understood the maximum and minimum penalties he was being exposed to, that he understood the constitutional rights that he would waive upon entry of his guilty plea, and that he was neither threatened nor coerced into pleading guilty. [*id.*, pp. 3-6].

The only contrary evidence offered by petitioner are his self-serving and conclusory allegations.  Moreover, even if  at some point in time after the entry of his plea, presumably while incarcerated at Angola after the February 2006 evidentiary hearing, petitioner was diagnosed with bipolar mood disorder for which he was placed on medication as petitioner suggests, that in no way establishes that petitioner was not competent to enter his guilty plea two years earlier in 2004.  To the contrary, the evidence before this and the state court courts demonstrates the opposite.  In fact, even petitioner's 1984 psychological evaluation negates petitioner's claim.  In that evaluation, which was apparently submitted in the Louisiana state courts, the doctor concluded that, while at age twelve petitioner suffered from a "conduct disorder", petitioner was of "at least average intelligence and possibly bright normal intelligence ..." and that there was  "no evidence of either psychosis or organic dysfunction."  [doc. 1-9, pp. 20-24].

Furthermore, the mere presence of a mental defect does not demonstrate mental incompetence. *Bruce v. Estelle*, 536 F.2d 1051, 1059 (5 Cir.1976). Without substantiation

in the record, in this case, proof that petitioner was incompetent at the time of his 2004 plea, the court cannot consider a petitioner's mere assertions on this critical issue to be of probative evidentiary value. See *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5 Cir.1983). Petitioner did not  show in the Louisiana state courts that he was mentally incompetent at the time of his 2004 plea and he provides no such evidence in this court.

Thus, the inquiry turns to whether petitioner's plea was otherwise "knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). A guilty plea must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).  If a challenged guilty plea is knowing, voluntary, and intelligent, its validity must be upheld on federal *habeas* review. *James v. Cain*, 56 F.3d 662, 666 (5 Cir.1995). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5 Cir.1979). To prevail,, he must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Id. citing Blackledge v. Allison*, 431 U.S. 63, 75, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

The record of the plea proceeding in this case refutes petitioner's assertion that his plea was involuntary.  To the contrary, the evidence, and in particular petitioner's plea

26

transcript and Mr. Piccione's testimony at the evidentiary hearing, establishes that petitioner understood and was aware of the consequences of his plea, that he was mentally competent, and that his plea was freely and voluntarily entered without promises, threats or coercion. *Blackledge*, 431 U.S. at 74; *Kelley v. Alabama*, 636 F.2d 1082, 1084 (5th Cir.1981). Such representations by a defendant during plea proceedings carry a strong presumption of verity and petitioner has not rebutted that presumption. See *Blackledge*, 431 U.S. at 74.  For these reasons, the undersigned concludes that petitioner's claim does not warrant federal habeas relief.

### Claim II – Ineffective Assistance of Counsel

As guaranteed by  the Sixth Amendment, criminal defendants have a constitutional right to the effective assistance of counsel at trial.  To prevail on an ineffective assistance claim in the context of a guilty plea, a habeas petitioner must demonstrate that his plea was rendered involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Smith v. Estelle*, 711 F.2d 677, 682 (5 Cir.1983).

In analyzing such claims, a federal habeas court  must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional

27

assistance or sound trial strategy. *Strickland*, 466 U.S. at 668, 688-89.  Thus, post-trial

scrutiny of counsel's performance must be highly deferential and every effort must be

made to eliminate the distorting effects of hindsight. *Id.* at 689. Strategic choices made by

counsel after thorough investigation of the law and facts relevant to plausible options are

virtually unchallengeable. *Id.* at 690.

Once a voluntary, knowing and intelligent guilty plea has been entered by a

criminal defendant, all non-jurisdictional defects in the proceedings preceding the plea

are waived, including all claims of ineffective assistance of counsel that do not attack the

voluntariness of the guilty plea. *Smith*, 711 F.2d at 682; *Bradbury v. Wainwright*, 658

F.2d 1083, 1087 (5 Cir.1981). Therefore, to the extent that petitioner complains that his

court-appointed trial counsel failed to adequately investigate the facts and circumstances

of his mental condition, he can only prevail by showing counsel's deficient representation

rendered his plea was involuntary.  As discussed above, this he has not done. Therefore,

petitioner's ineffective assistance of counsel claim is equally without merit.

In light of the above,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND**

**DISMISSED WITH PREJUDICE** because petitioner's claims are  procedurally

defaulted, and alternatively, that this petition be **DENIED AND DISMISSED WITH**

**PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the

United States District Courts since it plainly appears from the face of the petition and

exhibits annexed to it that the petitioner is not entitled to relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, this 7th day of September, 2007.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE